RECEIVED
2007 AUG -2 A 9:14
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES L. ROBINSON

PETITIONER

VS. CIVIL ACTION NO. CV06-1061-MHT

JAMES DELOACH,

RESPONDENTS

______________________________________/

**PETITIONER'S REQUEST LEAVE TO FILE SUPPLEMENTAL BRIEF IN SUPPORT**

Comes now James L. Robinson, and petition the Honorable Court to grant leave to file the supplemental brief in support of Robinson's claims now pending. The Court's order was entered for Respondent's answer to conform to the pleadings. Respondents did file a full supplemental answer before this Court. There was however no orders entered by the Court for Robinson to file. therefore Robinson did file on and about April 25, 2007 a timely reply to the supplemental answer which was filed. Robinson seek leave to make a full argument by brief to the claims which are timely before this Court. The following :

**BREIEF IN SUPPORT: LEGAL ARGUMENT**

Code Of Alabama 1975 Sections 13A-5-9, and 13A-5-9.1 must be read together, and full Legislative intent viewed with the full purpose. Habitual Offenders are a specific Class, which comes by Alabama law. Robinson's sentencing comes directly under the mandatory provisions of the Statute, 13A-5-9. The Statute did [illegible] seperate Classes by A.-B.-C. but it imposed the enhancements mandatorily to all pursuant to 13A-5-9.

Robinson pursuant to Code of Alabama 1975 Section 13A-5-9, Alabama adopted a full

sentencing rule for all repeat felony offenders. Alabama Criminal Rules, Rule 26.6(b)(3). Rule 26.6(b)(3), former Rule 6 made it mandatory that a criminal defendant who is to be sentenced under provisions of the HFOA, he/she **must** be given full notice by the State prior to sentencing that 13A-5-9 will be used. Robinson therefore comes under a full class as defined by Alabama law, and Alabama Legislative Intent. HFOA are a specific class, and the full ACT, and the words used in the Statute contains mandatory laanguage, and it specifically says; (see exhibit # 1.) Code Of Alabama 1975 Sec. 13A-5-9(a) : ***In [A]ll cases when it is shown that a criminal defendant has been previously convicted of a felony and after the conviction has committed another felony, he or she [M]ust be punished as follows:*** There is no class seperation within the Statute, and the clear plain language makes it mandatory for Robinson and all others who comes under the Class to receive the same provisions which Alabama Legislatures enforced by the law.

The full issues before this Honorable Court comes under Statute of Alabama law, and the United States 14th Amendment violations. Robinson avers that full statutory provisions must be considered.

1. A fundamental rule of statutory construction is that all statutes relating to the same subject or having the same general purpose **must be read together to constitute one law.** See Florence v. Williams, 439 SO.2d 83 (Ala.1983) Amending 13A-5-9.1 can only provide **one law**. Granting all **Non-violent** Class A-C retroactive application for reconsider-ation of sentencing.

2. In Siegelman v. Folmar, 432 SO.2d 1246 (Ala. 1983) The Court held that a Court construing a Statute must look not only to the language of the Statute, but also to the purpose and object of the enactment. Certainly all HFOA Non-violent was the purpose, if not evil exist.

3. Robinson provides that where discrimination exist, and there exist an evil hand there is a clear 14th United States Constitution violation. **EX PARTE HAYES**; "Futhermore if a Statute

is susceptible to two constructions, and one is workable and fair but the other is unworkable and unjust, the Court assumes that the Legislature intended that which is workable and ***fair.***

(A). That which is workable and fair comes directly from 13A-5-9 (a) which says: ***"In all cases when it is shown that a criminal defendant has been previously convicted of a felony and after the conviction has committed another felony he or she [M]ust be punished as [F]ollows***:

Robinson's sentence came from 13A-5-9 by mandatory language. Robinson is in the **[C]lass** of HFOA inmates. Amending of 13A-5-9.1 ***RETROACTIVE APPLICATION OF SECTION 13A-5-9***. It is well taken just what is fair by Legislative intent, and the full well understood language. Which says: (13A-5-9.1) ***The provisions of <u>Section 13A-5-9</u> [S]hall be applied ]R]etroactively by the sentencing judge or presiding judge for consideration of early parole of [E]ach nonviolent [C]onvicted offender..***

Robinson pursuant to the Court's ruling under <u>BAMA BUDWEISER OF MONTGOMERY INC. V. ANHEUSER BUSCH INC,</u> 611 SO.2d 238 (Ala. 1992) The Court's duty in construing a Statute, is to ascertain and effectuate the Legislative intent expressed in the Statute, which may be gleaned from the language used, the reason and necessity for the Act, and the purpose sought to be obtained.

(B). Robinson's equal protection clause violation under the 14th Amendment of the United States, State Court did not address the issues. the 14th Amendment violations exist, and Federal Court has subject matter jurisdiction.

**EQUAL PROTECTION CLAUSE**

The facts remain, and unrefuted that there is a equal protection clause violation. State Court did not resolve this issue. Robinson's claims has merits, and is a proven fact. From the bringing of this claim in State Court great retaliation came for years, and still exist. But when

you consider Federal law you must comply with the **Supremacy Clause** of the **United States Constitution**. U.S. Const. Art. VI. provides that the Laws of the United States, **[S]hall** be the Supreme Law of the Land. Robinson comes under the Constitution, and the 14th Amendment violation which takes place, and has resulted in violating the 14th Amendment is a fundamental miscarriage of justice, and State Of Alabama has not resolved the United States Constitutional Violation which exist.

Robinson shows this Court that several constitutional questions were raised with 13A-5-9.1 under KIRBY. (see exhibit # 2.) At no time did State Of Alabama make any consideration of the **Equal Protection Clause**, where discrimination exist, and granting relief to only two classes of HFOA Offenders. But the very case cited Monroe v. Harco,Inc., 762 SO.2d 828 (Ala.2000) makes it clear that where unconstitutional provisions exist in the Statute, then it must be that the statutes purpose be corrected to provide uniform. uphold the constitution and make it fair.

**QUESTIONS TO BE CONSIDERED UNDER FACTS**

1. If the purpose was to resentence only two classes Life and Life Without. Did the Legislature form the opinion that based on Code Of Alabama 1975 Sec. 14-9-41(a) that ADOC was giving CIT Good Time to all but Life ?

2. The mandatory words spoken by **[M]ust**. How is it applied in 13A-5-9 to all ?

3. The 14th Amendment of the United States Constitution violation is this claim proper venue for Federal Court ?

**CIT GOOD TIME AND HFOA CLAIMS ARE DUE FEDERAL REVIEW.**

The two claims under the Equal Protection Clause have Federal Jurisdiction, and a great miscarriage of justice exist. First Alabama Prisons came under full Federal review, and rulings dating back to the early 70's and all the way to Newman V. Graddick. Recent ruling coming from this Court for the Females. Alabama has housed males and

females in out of State Private Prisons. Alabama County Jails having serious constitutional and Alabama State law violations. The 14th Amendment violations creates evil, and it has caused serious problems within Alabama Prisons. Robinson shows that it has in fact been addressed in Alabama Courts and there are rulings which supports Robinson's claim to which full relief is due for both Statutes. The following for both :

**ALABAMA CIT GOOD TIME**

1. HILSABECK V. STATE, 477 SO.2d 465 (Ala. Cr. App. 1984) EX PARTE HILABECK, 477 SO.2d 472 (Ala. 1985) Alabama ruled on the Constitutionality of ACT 80-446, and it was made specifically clear that ACT 80-446 provided that ***No Habitual Offender*** would receive CIT Good Time.

(A). Supreme Court Judge Oscar Adams in his dissent made it well clear that there was a very serious problem under the Statute, where only a few could receive CIT Good Time.

2. In October of 1991 ACT 91-637 amended 14-9-41(e) and increased CIT Good Time to inmates who were sentence with 15 years and less. The original purpose therefore of ACT 80-446 was defeated, and Alabama awarded Habitual Offenders CIT Good Time.

3. Alabama then ruled that there is a equal protection challenge to a system awarding CIT Good Time. See BROOKS V. STATE, 622 SO.2d 447 (Ala. Crim. App. 1993) The Court ruled there was a equal protection violation.

Robinson's equal protection clause under the 14th Amendment exist, and it is known to Attorney General of Alabama that there is a prima facie case of Federal United States violation. Awarding CIT Good Time to Class C and Class B inmates by mere sentence number alone is the issue which Brook's ruled on, based on sex offenders, where the only difference was the timing and mere sentence number alone. Today discrimination exist, equal protection violation where a Class C felony for 15 Years under possession of marijuana, and 20 years for possession of marijuana under the HFOA with 3 priors is no difference in the degree of the crime, and no

justification for discrimination that is being done. However United States Constitutional violations the State of Alabama have knowingly, and intentionally violated. It can't be denied where State of Alabama promised by consent decree in ***NEWMAN V. GRADDICK,*** 740 F2d 1513 (11th Cir. 1984) to resolve the United States Constitutional violations which existed.

The issues which comes before this Court are govern by Federal Laws, where the United States Constitution is being violated. Alabama by another very significant ruling held. OPINION OF JUSTICES, 410 SO.2d 60 ***"Generally any law with respect to the punishment to be given must operate equally on every citizen or inhabitant of the State, and a statute is void as a denial of equal protection of the laws which prescribes a different punishment or different degrees of punishment for the [S]ame acts committed under the same circumstances by persons in like situations."*** Before this Court we have two Statutes of Alabama Law that violates the equal protection clause under the 14th Amendment. Robinson shows that the two Statutes are not operating equally, and the degree of punishment is a full issue. To award resentencing to a inmate with Life who was sentence under the mandatory enhancement by 13A-5-9, and deny others who were sentenced under the same statute non-violent consideration, and the only difference is a mere sentence number alone, violates the 14th Amendment of the United States.

**RELIEF REQUESTED**

The Court to take full jurisdiction over this matter, and issue and appropiate order. The Court to grant all relief to which Robinson is entitled.

Respectfully

James Robinson
1290 RED EAGLE ROAD
MONTGOMERY, AL. 36110
JULY 31, 2007

## CERTIFICATE OF SERVICE

I do hereby certify and say that I have served the Attorney General Troy King, with a copy of the same address as follows:

1. Attorney NANCY M. KIRBY
11 South Union Street
MONTGOMERY, AL. 36130.

Postage paid by the undersign, and placed in the U.S. Mail Done this 31st Day of July, 2007.

[signature]

EXHIBITS
ALABAMA STATUTE AND CASE LAW

EXHIBIT # 1 - 13A-5-9

EXHIBIT # 2 — KIRBY V. STATE - KIRBY

EXHIBIT # 3 - RULES CRIMINAL RULE 26.6(b)(3)

EXHIBIT # 4 - MANDATORY WORD MUST

EXHIBIT # 5 - ACT 80-446

EXHIBIT # 6 - ACT 91-637

JAMES ROBINSON
#121865 A-51A
1290 RED EAGLE ROAD
MONTGOMERY, AL. 36110




FEDERAL COURTHOUSE
OFFICE OF CLERK
P. O. BOX 711
MONTGOMERY, AL. 36101

LEGAL MAIL

#1

**13A-5-9. Repeat or habitual offenders; generally.**

**(a)** In all cases when it is shown that a criminal defendant has been previously convicted of a felony and after the conviction has committed another felony, he or she must be punished as follows:

**(1)** On conviction of a Class C felony, he or she must be punished for a Class B felony.

**(2)** On conviction of a Class B felony, he or she must be punished for a Class A felony.

**(3)** On conviction of a Class A felony, he or she must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years.

**(b)** In all cases when it is shown that a criminal defendant has been previously convicted of any two felonies and after such convictions has committed another felony, he or she must be punished as follows:

**(1)** On conviction of a Class C felony, he or she must be punished for a Class A felony.

**(2)** On conviction of a Class B felony, he or she must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years.

**(3)** On conviction of a Class A felony, he or she must be punished by imprisonment for life or for any term of not less than 99 years.

**(c)** In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he or she must be punished as follows:

**(1)** On conviction of a Class C felony, he or she must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years.

**(2)** On conviction of a Class B felony, he or she must be punished by imprisonment for life or any term of not less than 20 years.

**(3)** On conviction of a Class A felony, where the defendant has no prior convictions for any Class A felony, he or she must be punished by imprisonment for life or life without the possibility of parole, in the discretion of the trial court.

**(4)** On conviction of a Class A felony, where the defendant has one or more prior convictions for any Class A felony, he or she must be punished by imprisonment for life without the possibility of parole.

**History.** Acts 1977, No. 77-607; Acts 1979, Nos. 79-471, 79-664; Acts 2000, No. 00-759.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

#2

Emphasis added.) Section 6.11 of Amendment No. 328 grants this Court the authority to promulgate rules of procedure, including criminal procedure, but it prohibits this Court from enacting a rule that alters the jurisdiction of a court. Only the Legislature, within constitutional limits, has the authority to alter the jurisdiction of the circuit courts. *Henderson v. State*, 616 So. 2d 406, 407-10 (Ala. Crim. App. 1993) . By passing a general act of statewide application, the Legislature can change the rules this Court has promulgated governing the administration of all courts. *Ex parte Kennedy*, 656 So. 2d 365, 367 (Ala. 1995) . Section 13A-5-9.1 is an act of statewide application that confers jurisdiction upon the sentencing judge or the presiding judge to apply the 2000 amendment to the HFOA retroactively.

We conclude that the trial court had jurisdiction pursuant to § 13A-5-9.1 to consider Kirby's motion to reconsider his sentence.

III. *Constitutionality of § 13A-5-9.1*

Having determined that the trial court had jurisdiction to consider Kirby's motion, we reverse the Court of Criminal Appeals' order dismissing the appeal. In order to address the issue whether § 13A-5-9.1 is constitutional, we have invoked § 12-3-14, Ala. Code 1975 . Although § 13A-5-9.1 has been in effect for almost three years, there are no procedures in place to implement it. According to the State, the attorney general wrote a letter to the Commissioner of the DOC stating that § 13A-5-9.1 violates § 43 of the Constitution because it delegates legislative power to the executive branch and that EO 62 violates § 43 of the Constitution because it encroaches upon the constitutional power of the Legislature. The Alabama Sentencing Commission has not approved a procedure proposed by the DOC for implementing § 13A-5-9.1 . The result is that there is an impasse that must be resolved without further delay.

A. *Standard of Review*

In *Monroe v. Harco, Inc.*, 762 So. 2d 828 (Ala. 2000) , this Court restated the long-standing rules governing the review of an act of the Legislature under constitutional attack:

"'In reviewing [a question regarding] the constitutionality of a statute, we "approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government."' *Moore v. Mobile Infirmary Ass'n*, 592 So. 2d 156, 159 (Ala. 1991) (quoting *Alabama State Fed'n of Labor v. McAdory*, 246 Ala. 1, 9, 18 So. 2d 810, 815 (1944)) . Moreover, 'where the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other would be valid, the courts should adopt the construction [that] would uphold it.' *McAdory*, 246 Ala. at 10, 18 So. 2d at 815 . In *McAdory*, this Court further stated:

"'In passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment {899 So. 2d 973} of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.'

" 246 Ala. at 9, 18 So. 2d at 815 (citation omitted). We must afford the Legislature the highest degree of deference, and construe its acts as constitutional if their language so permits. *Id.*"

762 So. 2d at 831 .

B. *Separation-of-Powers Analysis*

The State first argues that § 13A-5-9.1 is unconstitutional because, it argues, that section improperly delegates to the judicial branch of government the authority to grant parole, a power reserved to the legislative branch, thereby violating the separation-of-powers clause contained in § 43, Ala. Const. of

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

#2

1901 . Kirby argues that a trial court's only authority under § 13A-5-9.1 is to modify the sentence of an inmate previously sentenced to life imprisonment without the possibility of parole. Although such a modification might then make that inmate eligible for parole, Kirby maintains that § 13A-5-9.1 does not confer upon the judicial branch the power to grant parole.

Section 13A-5-9.1 directs the sentencing judge or the presiding judge to apply the provisions of § 13A-5-9 retroactively, thereby making the benefits of the 2000 amendment to the HFOA available to inmates who were sentenced pursuant to the HFOA before it was amended in 2000. Section 13A-5-9(c)(3) , as amended in 2000, allows a sentencing judge to decide in certain circumstances whether a sentence of life imprisonment or life imprisonment without the possibility of parole is appropriate for a particular inmate. In making that decision, the sentencing judge does not have the power to decide the secondary issue -- whether the defendant will be granted parole should the judge sentence him or her to "straight" life imprisonment.3 Under § 13A-5-9.1 , a judge applying § 13A-5-9(c)(3) to a previously sentenced defendant merely has the authority to conduct a new sentencing hearing, and in the judge's discretion, to modify a previous sentence under which a defendant would never have been eligible for parole to a sentence of "straight" life imprisonment, under which a defendant might thereafter become eligible for parole, depending upon the factors then established by the Parole Board.

The clear reference in § 13A-5-9.1 to the provisions of § 13A-5-9 makes it obvious that the trial court's only authority is to modify the sentence of an inmate who is not eligible for parole under the sentence imposed pursuant to the HFOA before its amendment in 2000, sentencing that inmate instead to a sentence under which he or she may become eligible for parole. If the trial court does determine that a defendant should receive a sentence of "straight" life imprisonment, that resentencing determination may trigger a parole evaluation by the Parole Board if the inmate has served a sufficient amount of time in prison. On the other hand, if an inmate has served so little time that he or she is not yet eligible for parole, that resentencing determination will not result in immediate parole consideration. Thus, § 13A-5-9.1 does not confer upon the judicial branch the power to grant parole.

C. *Vagueness Analysis*

The State also argues that § 13A-5-9.1 is unconstitutionally vague because it provides that only a "nonviolent convicted offender" {899 So. 2d 974} is entitled to retroactive application of § 13A-5-9 , but it does not provide any standards for determining which inmates can be classified as "nonviolent convicted offenders." The State also argues that the statute is vague because it does not define the factors that should be taken into account in determining who is eligible for resentencing under the statute. Finally, the State argues that the statute is vague because it does not make clear which entity should decide whether an inmate is a "nonviolent convicted offender" within the meaning of § 13A-5-9.1 . Kirby argues that the language of the statute provides reasonably clear standards to guide the trial courts, the DOC, and the Parole Board in deciding which offenders are entitled to resentencing. Because § 13A-5-9.1 sufficiently narrows the class of people to whom it applies, Kirby argues, its language is not unconstitutionally vague.

It is well established that the Legislature may delegate "the power to execute and administer the laws," so long as in so doing it provides "reasonably clear standards governing the execution and administration of the statute." *Folsom v. Wynn*, 631 So. 2d 890, 894 (Ala. 1993) . Reading § 13A-5-9.1 in conjunction with § 13A-5-9 , it is clear that a sentencing judge or a presiding judge can resentence only two narrowly defined classes of habitual offenders: those who had been sentenced to life imprisonment without the possibility of parole under the mandatory provisions of the HFOA upon conviction of a Class A felony with no prior Class A felony convictions; and those who had been sentenced to life imprisonment under the mandatory provisions of the HFOA upon conviction of a Class B felony. Moreover, of those habitual offenders, the judge can resentence only those who are nonviolent offenders.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

#2

We conclude that the state's trial judges have the authority under the statute to determine whether a defendant is a nonviolent offender and that those judges are competent to make that determination based upon the nature of the defendant's underlying conviction, other factors brought before the judge in the record of the case, and information submitted to the judge by the DOC and the Parole Board concerning the inmate's behavior while incarcerated. It is axiomatic that only the sentencing judge or the presiding judge should evaluate the inmate's crime and his or her conduct associated with that crime in deciding whether the inmate is a nonviolent offender, just as the judge evaluated those factors at the time the inmate was originally sentenced. Another factor in determining whether the inmate is a nonviolent offender, however, should be a consideration of the inmate's conduct while incarcerated, which knowledge is within the purview of the DOC. Section 13A-5-9.1 provides that the DOC will conduct an evaluation of the inmate's performance while incarcerated and submit its evaluation to the court so the judge can take that information into account in determining whether the inmate is eligible for reconsideration of his or her sentence. Although § 13A-5-9.1 is not a model of clarity, it does provide reasonably clear standards for its execution and administration; therefore, the trial court erred in declaring it unconstitutional.

We note that one of the problems Kirby encountered in getting his motion for reconsideration of his sentence heard in the trial court was the failure of the DOC to provide that court with the evaluation contemplated by § 13A-5-9.1 . While the information available to the court in the DOC's evaluation will be helpful in making its determination, we conclude that the administration of § 13A-5-9 requires {899 So. 2d 975} that if the DOC does not provide the evaluation in a timely fashion, the State will have waived any input as to the inmate's conduct while incarcerated that the sentencing judge or the presiding judge might otherwise have considered in determining whether the inmate is a nonviolent offender.

In *Rice v. English*. 835 So. 2d 157 (Ala. 2002) , we discussed the judiciary's authority to review legislative acts, quoting Judge Learned Hand's caution that judicial review '"need not be exercised whenever a court sees, or thinks that it sees, an invasion of the Constitution."' 835 So. 2d at 163 (quoting Learned Hand, *The Bill of Rights: The Oliver Wendell Holmes Lectures, 1958*, 10-11 (Harvard University Press 1958)). In holding that § 13A-5-9.1 is not unconstitutional, we adhere to the admonition of this Court in *Ex parte Selma & Gulf R.R.*, 45 Ala. 696 (1871) , that we should refrain from exercising the power of judicial review "unless some express clause of the constitution was *clearly disregarded*." 45 Ala. at 728 (emphasis added). We therefore decline the State's request to invoke what Judge Hand described as '"no doubt a dangerous liberty, not lightly to be resorted to."' 835 So. 2d at 163 , quoting L. Hand, at 29. No basis exists for further delay of the retroactive application of the 2000 amendment to § 13A-5-9 to allow trial courts to modify the sentences of those eligible inmates formerly sentenced under the HFOA before its amendment.

IV. *Conclusion*

We reverse the order of the Court of Criminal Appeals dismissing Kirby's appeal, and on transfer of the appeal to this Court, we reverse the judgment of the trial court declaring § 13A-5-9.1 unconstitutional and remand this cause for the trial court to consider Kirby's motion for reconsideration of his sentence of life imprisonment without the possibility of parole.

REVERSED AND REMANDED.

Nabers, C.J.,* and Houston, See, Brown,* Johnstone, Harwood, Woodall, and Stuart, JJ., concur.

*Altho

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

#3

"We hold that in order to sentence a criminal defendant under the **Habitual** Felony **Offender** Act, the Act must be invoked prior to the defendant's original sentencing, as mandated by **Rule** 6 of the Temporary **Rules** of Criminal Procedure [now **Rule** 26.6(b)(3), A.R.Crim.P.]. Furthermore, a sentence may not be subsequently set aside because of a failure to apply the **Habitual** Felony **Offender** Act."

> *Williams*, 510 So.2d at 136 (emphasis in original). In *Williams*, the State gave notice of its intent to invoke the Habitual Felony Offender Act ("HFOA") and the defendant was resentenced approximately 11 weeks after the original sentencing and after the appellant had begun serving that sentence. We find that case factually distinguishable from the presented case.

In this case, it clearly appears that the State had given the appellant notice of its intent to invoke the HFOA prior to sentencing. It also clearly appears that the trial court set aside the sentence it had imposed upon the appellant so that the HFOA could be imposed.

However, within the context of this case, it also appears that the trial court had not finished sentencing the appellant when the prosecutor called the trial judge's attention to the applicability of the HFOA. For one thing, the trial court had not advised the appellant of his right to appeal as required by Rule 26.9(b)(4), A.R.Crim.P.

We view this matter as analogous to the trial court's authority to allow a party to reopen a case to allow further proof. "The decision of whether to reopen a case for additional evidence lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Green Tree Acceptance, Inc. v. Standridge*, 565 So.2d 38, 46 (Ala. 1990).

"'It was properly within the discretion of the trial court to reopen the case for the further reception of evidence after the State had rested and before the jury had been charged or begun deliberations. *Harris v. State*, 283 Ala. 148, 214 So.2d 843 (1968). ' *Harper v. State*, 420 So.2d 835, 840 (Ala.Cr.App.1982). See also *Jackson v. State*, 167 Ala. 44, 52 So. 835 (1910). We hold that the trial court did not err by exercising its discretion to allow the State to reopen its case [to allow the state to introduce evidence of the defendant's flight]. *Bristow v. State*, 418 So.2d 927 (Ala.Cr.App. 1982), and cases cited therein."

> *Johnson v. State*, 502 So.2d 877, 881-82 (Ala.Cr.App. 1987).

II

Although the appellant alleges error in the oral charge of the trial court, defense counsel announced "satisfied" and failed to make any objection. R. 201, 204. Objections to a trial court's instructions to the jury cannot be raised for the first time on appeal. See Rule 21.2, A.R.Crim.P.

The judgment of the circuit court is affirmed.

AFFIRMED.

All Judges concur.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

#4

Subsequent felony convictions trigger operation of the Alabama **Habitual** Felony **Offender** Act (HFOA) and the enhanced penalty is determined by the number and class of prior felonies as well as the class of the felony which invokes the imposition of the statute. The statute is constitutional insofar as it augments sentences for a particular conviction because of past criminal convictions. The HFOA does not violate the U.S. Const. amend. VIII because it does not produce a sentence that is grossly disproportionate to the severity of the crime.

Under the Alabama **Habitual** Felony **Offender** Act (HFOA), several offenses arising out of a common event or occurrence are regarded as separate offenses for enhancement under the HFOA, although, in another jurisdiction, the offenses would be treated as one conviction or concurrent sentences were imposed. All felony convictions, even those that occurred before the HFOA became effective and regardless of their origin, are to be considered in determining the correct sentence under the HFOA. The determination of whether an out-of-state conviction should be used to enhance punishment under the HFOA is based upon Alabama's definition of the offense, and not on whether the foreign jurisdiction treats the crime as a felony or misdemeanor.

The Alabama **Habitual** Felony **Offender** Act is mandatory. The word "must" leaves no discretion with the court as to whether a repeat **offender** is to be punished under the statute. Concomitantly, the prosecutor, as an officer of the court, has no discretion about whether to inform the court of a convicted defendant's prior convictions about which he is aware so that the court can sentence the individual in accordance with the clear mandate of the statute.

Certified copies of case action summary sheets, docket sheets or other records of the court are admissible for the purpose of proving prior convictions of a crime, if the prior conviction is otherwise admissible under the laws of the state. Ala. Code § 13A-5-10.1 (Supp.1992). Evidence of prior convictions submitted pursuant to Section 13A-5-10.1 must meet Alabama attestation requirements. The proper certification for documents from Alabama counties requires attestation by the custodian of the public documents and an official seal or certification by the record keeper. Proving prior felony convictions from another jurisdiction requires the attestation of the clerk and seal of the court, plus a certificate from the judge, chief judge or presiding magistrate judge that the attestation is correct. Consequently, proof of prior felony convictions failing to comply with the requirements for attestation from another jurisdiction cannot be considered for sentence enhancement under the Alabama **Habitual** Felony **Offender** Act.

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 1:06-cv-01061-MHT-WC Document 31-5 Filed 08/02/2007 Page 1 of 2



#5

**Section 2.** All laws or parts of laws inconsistent herewith are hereby repealed to the extent of such inconsistency.

**Section 3.** This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.

Approved May 19, 1980

Time: 5:00 P.M.

---

Act No. 80-445

S. 103—Pearson

AN ACT

To provide that legislative appropriations to the University of Alabama in Birmingham and the University of South Alabama are for the unrestricted support of the activities of the University and therefore insurance companies are prohibited from applying or taking into account in any manner any portion of those appropriations in determining reimbursement for patient care activities.

*Be It Enacted by the Legislature of Alabama:*

**Section 1.** Any appropriations made by the Legislature of Alabama to the University of Alabama in Birmingham and to the University of South Alabama shall be for the unrestricted support of the activities of the said University and therefore insurance companies, whether operated for profit or not for profit, licensed under the laws of the State of Alabama, whether acting on their own behalf or for others, are prohibited from applying or taking into account in any manner whatsoever, any portion of those appropriations in determining reimbursement for patient care activities.

**Section 2.** This Act shall become effective immediately upon its passage and approval by the Governor or upon its otherwise becoming a law.

Approved May 19, 1980

Time: 5:00 P.M.

---

Act No. 80-446

S. 107—Cook

AN ACT

To establish the "Alabama Correctional Incentive Time Act"; to provide for earned deductions from penitentiary and hard labor sentences and to establish certain criteria therefor; to create classifications for measurement of such

consistent herewith are
nsistency.

ctive immediately upon
, or upon its otherwise

S. 103—Pearson

University of Alabama in
for the unrestricted support
e companies are prohibited
ner any portion of those
ent care activities.

by the Legislature of
rmingham and to the
unrestricted support
therefore insurance
ot for profit, licensed
ether acting on their
n applying or taking
ny portion of those
ent for patient care

ve immediately upon
upon its otherwise

S. 107—Cook

me Act"; to provide for
tences and to establish
measurement of such

#5



deductions and eligibility therefor; to require minimum sentences prior to parole eligibility; to authorize the commissioner of the department of corrections to restore certain portions of such deductions lost; to authorize the commissioner to issue, promulgate and implement such rules and regulations necessary to implement the provisions of this act; to specifically repeal Sections 14-9-1, 14-9-2, 14-9-4, 14-9-20, 14-9-21, 14-9-22, 14-9-23, 14-9-24 and 14-9-25 of the Code of Alabama 1975, and all laws or parts of laws conflicting with this act; to make certain exemptions from the provisions of this act for those persons presently serving as inmates in the penitentiary or at hard labor and for those who are convicted for crimes committed prior to the effective date of this act, so as to provide that such prisoners shall earn deductions from sentences as presently provided by law; and to provide habitual offenders shall not be eligible for any deductions from sentences.

*Be It Enacted by the Legislature of Alabama:*

**Section 1.** This act shall be known as the "Alabama Correctional Incentive Time Act."

**Section 2.** Each prisoner who shall hereafter be convicted of any offense against the laws of the State of Alabama and is confined, in execution of the judgment or sentence upon any conviction, in the penitentiary or at hard labor for the county or in any municipal jail for a definite or indeterminate term, other than for life, whose record of conduct shows that he has faithfully observed the rules for a period of time to be specified by this act may be entitled to earn a deduction from the term of his sentence as follows:

(1) Seventy-five days for each thirty days actually served while the prisoner is classified as a Class I prisoner.

(2) Forty days for each thirty days actually served while the prisoner is a Class II prisoner.

(3) Twenty days for each thirty days actually served while the prisoner is a Class III prisoner.

(4) No good time shall accrue during the period the prisoner is classified as a Class IV prisoner.

Within 90 days after the effective date of this act the commissioner of the department of corrections shall establish and publish in appropriate directives certain criteria not in conflict with this act for Class I, II, III, and IV prisoner classifications. Such classifications shall encompass consideration of the prisoner's behavior, discipline, work practices and job responsibilities.

Class I is set aside for those prisoners who are considered to be trustworthy in every respect and who, by virtue of their work habits, conduct and attitude of cooperation have proven their trustworthiness. An example of a Class I inmate would be one who

mium that may be
the Bonds to be re-

the purpose of pro-
at their respective
Bonds issued by it
olish the objects of
such purpose and
y be necessary for
rom the tax levied
abama 1975, after
ount necessary for
, Code of Alabama
hereof; and (b) any
ent of bonds of the
s act or any subse-
appropriated and
purpose of paying
ein authorized.

t of the revenues
he state treasurer
cipal of and inter-
the provisions of
hall respectively
rized and directed
ining thereto.

his Act are sever-
unconstitutional,
emains.

become effective
the Governor, or

— Senator Ellis

ty salary to the pro-
ich ends in January
s duties as chairman



#6

of the Shelby County commission by a United States federal court order and relinquish use of automobile and expense account now receiving.

*Be It Enacted by the Legislature of Alabama:*

**Section 1.** Since the probate judge of Shelby County has been relieved of his duties and compensation as chairman of the county commission by a United States federal court order on May 23, 1990, he shall receive for the remainder of his term of office an additional annual salary of $19,000.00, payable in equal monthly installments from the county general fund. By accepting this additional salary, he will relinquish, and not continue to receive, an expense allowance as provided for in Act No. 83-777, S. 562, 1983 Regular Session, which act provides for creating a license-issuing division within the probate judge's office in order to set up a one-stop tag purchase within Shelby County. Any additional compensation provided for in this act shall terminate at the expiration of the current term of office of the probate judge.

**Section 2.** The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.

**Section 3.** This act shall become effective on the first day of the month immediately following its passage and approval by the Governor, or upon its otherwise becoming a law.

Approved July 31, 1991

Time: 5:00 P.M.

---

Act No. 91-637

H. 194 — Rep. Rogers (J)

AN ACT

To amend Section 14-9-41 of the Code of Alabama 1975, which relates to computation of incentive time deduction(s) so as to allow an inmate who has been sentenced to a term of 15 years or less in the state penitentiary to earn correctional incentive time in accordance with the other provisions of this section, and to make this section retroactive.

*Be It Enacted by the Legislature of Alabama:*

**Section 1.** Section 14-9-41 of the Code of Alabama 1975, herein amended to read as follows:

"Section 14-9-41.

(a) Each prisoner who shall hereafter be convicted of any offense against the laws of the state of Alabama and is confined, in execution of the judgment or sentence upon any conviction, in the penitentiary or at hard labor for the county or in any municipal